## CARLEY v. GAIR.

(Supreme Court, Appellate Division, Second Department. April 15, 1904.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—DEFECTIVE MACHINERY—NON-SUIT.

Where an operator of a paper corrugating machine was injured by having his fingers crushed between the rollers, which started suddenly on his relieving them from the strain of paper which had become clogged in the machine, he was not entitled to recover on the ground that the machine

was defective in that it occasionally started when the power was cut off, in the absence of clear proof that he in fact did cut off the power before attempting to free the machine.

Appeal from Trial Term, Kings County.

Action by Eugene Carley against Robert Gair. From a judgment in favor of defendant dismissing the complaint at the close of plaintiff's case, he appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

Edward J. McCrossin, for appellant.

Frank Verner Johnson (E. Clyde Sherwood, on the brief), for respondent.

HIRSCHBERG, P. J. The plaintiff was injured while working for the defendant at a machine for corrugating paper. The machine was supplied with three rollers or cylinders between which the paper passed in the process of corrugation. Its operation was controlled by a lever, which, when pushed up, cut off the power, and started the machine again when pushed down. On the day of the accident the machine became clogged and stopped its motion owing to the fact that too much paper was put in, and while the plaintiff was engaged in clearing it of the excess of paper apparently without having first cut off the power, it started suddenly, drew his hand between the rollers, and inflicted the injury complained of. The plaintiff produced but one witness besides himself on the subject of the operation of the machine, and proved by him that the machine was out of order, so that it would occasionally start even when the power was cut off. If the plaintiff had made it clear that the power had been cut off at the time of the accident, this evidence would have required a submission of the case to the jury. But the plaintiff's evidence on this point, while somewhat obscure, tends strongly to the conclusion that he failed to stop the machine when it became clogged, and that it started up again when he relieved it from the tension of the paper, which he did with his fingers. His witness testified as follows:

"If the machine is clogged, it would stop itself if it was enough paper in there. In a stoppage of that kind the force of the belt could not overcome it because of the stoppage of the machine in that way because of the pressure between the cylinders. It would slip on the driving wheel of the machine and do nothing. It was apparent to anybody that the machine, as soon as you would relieve it, it would start itself with the belt. Just as soon as you remove that paper, then the machine would go, because it hadn't been shut off. Therefore, if it got clogged, it was the duty of the operator to cut here and throw the wheel—throw this off and stop the machine. That was apparent to anybody. So in the working of this machine, if the paper got clogged between the lower and the middle cylinder, or if it got clogged between the middle and the upper cylinder, to such an extent that it would stop the machine, it was the apparent duty of the operator immediately to turn off his power. Then he could work as long as he wanted to in pulling out this paper. There is nothing about that machine that you can not see at once. You can see everything, you can see how the wheels go. This is about the simplest form of turning on and off power."

The plaintiff, in recounting the accident, testified as follows:

"On this 29th day of May, 1900, we started in the morning, and I pulled the paper to the roll, and I let it go, and then the machine got nearly three-quarter—the machine stopped there. The paper stopped up in the roll. Q. You say you had to stop the machine by pushing the lever up? A. Push her, yes, to stop. Q. Did it stop then? A. Yes, this time it stopped itself. When it stopped I looked in the machine—the rollers of the machine—when it stopped up with the paper, and I tried to pull that paper in the roll. One roll going that way, I took my hands to pull up the paper. I saw a lot of paper in the roll stopping her up. The rolls are going one this way, and one the other way. It stopped with a lot of paper, and I tried to clear that roll. Then the machine started itself and smashed my fingers off. The machine started itself. I did not pull the machine or do anything to make it start. After the machine started, as I have described it to the jury, my fingers were caught."

On cross-examination he testified:

"Q. * * * After the paper came through between the first and second roller, did you stop the machine? A. I stopped that machine. Mr. Mc-Crossin. I submit the witness talks very poor English at best, and should not be cut right off whenever he tries to answer. The Court: The witness has that difficulty and some allowance must be made. If you think the testimony is not correct, you may try and correct it on the redirect. We must do the best we can."

Notwithstanding this suggestion of the court no attempt was made by redirect examination or otherwise to furnish an explanation of what the answer was to be which the plaintiff's counsel himself apparently interrupted. The plaintiff was afterwards recalled by his counsel as a witness, but no attempt was made to prove by him that he turned the power off after the machine stopped itself and before he attempted to remove the paper which had clogged it. The plaintiff admitted full knowledge of the risk which would exist in an endeavor to clear the cylinders with his bare hands while the power was on, and his right to recover was dependent upon affirmative proof that he did not negligently incur that risk by a failure to throw off the power by the simple process of pushing up the lever which was supplied for that purpose. He was instructed in the use and operation of the machine before he went to work upon it alone, and he was told by his instructor, to quote his own testimony, "to take up the lever if in trouble, stop, push it up, and, if I want to start, pull down." He did, indeed, testify generally, "I stop that machine when I clean it;" but he not only gave a clear account of his actions when, on the occasion of the accident the machine stopped itself, by stating that when it stopped he tried to pull the clogging paper away, without the remotest suggestion of first shutting off the power, but throughout the entire trial no question was asked him on the subject of the shutting off of the power as a preliminary step to the attempt to clean it. As the proof was permitted to stand, the utmost that can be said of it is that it affords room for a bare inference that the accident was not due, in part at least, to the plaintiff's negligence. It was his duty, however, to have furnished clear and positive proof on that branch of the case, and his failure to do so justifies the disposition of the action made at the trial. The judgment should be affirmed.

Judgment affirmed, with costs. All concur.